STATE of Iowa, Appellee,

v.

Robert Glenn DICKS, Appellant.

No. 90–492.

Court of Appeals of Iowa.

April 23, 1991.

sitting without a jury. The trial court sentenced him to consecutive terms of imprisonment as follows: three twenty-five-year terms for second-degree sexual abuse, ten years for third-degree sexual abuse, five years for lascivious acts with a child, two ten-year terms for sexual exploitation of children, and five years for failure to appear. Dicks alleges numerous errors relating to the conduct of the trial and his sentencing. We affirm.

### I.

The record shows that Dicks entered a relationship with D.C. in late 1984. D.C. had two children, B.C. and J.C., who were approximately eleven and ten years old, respectively, at the time. From 1984 through 1987 Dicks kept clothes at D.C.'s Monroe County home, where he stayed several nights a week.

On several occasions, Dicks fondled B.C.'s breasts and vagina, touched her with his penis, and at least once penetrated her vagina with his finger. He also fondled J.C.'s penis and on at least one occasion sought to have J.C. masturbate him while he attempted to masturbate J.C. Defendant and D.C. also frequently engaged in intercourse in the presence of the children. On other occasions Dicks fondled or, with his penis, touched D.C.'s five-year-old niece, A.K., and another one-year-old girl, E.S.

Dicks and D.C. recorded many of these activities with photographs and often had the children take photographs of them in various acts of intercourse. When police learned of Dicks' and D.C.'s activities, they interviewed B.C., who substantiated their information. Afterward, they interviewed J.C. at home and asked him whether any photographs were in the house. J.C. told police that they were usually kept in his mother's closet or in her possession. Acting on a police request, J.C. looked in the closet, but could not locate the photographs. The officers did not themselves conduct a search.

Later, police officers and a Department of Human Services employee confronted D.C. with the information gathered from

Alfredo Parrish of Parrish, Kruidenier & Exline, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Ann E. Brenden, Asst. Atty. Atty., Annette Scieszinski, County Atty., and William S. Owens, Asst. County Atty., for appellee.

Heard by DONIELSON, P.J., and SCHLEGEL and HABHAB, JJ.

SCHLEGEL, Judge.

Defendant Robert G. Dicks appeals his convictions on eight charges by a court

their interviews. D.C. denied knowledge and exercised her constitutional right in refusing to permit a warrantless search. Police posted guards to prevent destruction of evidence. Based on the statements given by the children, police obtained a search warrant. Upon executing the warrant, D.C. surrendered two photograph albums to officers. Police discovered other evidence not specified and took the extra precaution of obtaining a second search warrant. Among the other evidence were notes demonstrating how Dicks and D.C. conspired for the opportunity of having the children alone and by means of drugs to prevent them from revealing the acts committed on them.

The district court rejected a pretrial motion to suppress the evidence seized during the searches. The court cited the separate, corroborative statements of the children as probable cause that evidence of criminal activities, such as sexual abuse, lascivious acts, and sexual exploitation, would be found on the premises to be searched. Along with the testimony by B.C. and J.C., the evidence seized constituted the primary evidence against Dicks, especially as pertained to those acts committed against the five- and one-year-olds. We address the issues in the general order in which the alleged errors arose.

## II.

Dicks contends that the district court erred in finding that the appropriate venue was established for three of the counts charged. He complains that there was no evidence to show that the sexual abuse and sexual exploitation of A.K. (Counts I and V) or sexual abuse of E.S. (Count VI) occurred in Monroe County. The State argues that Dicks waived or acquiesced in the alleged error, and in any event, the evidence established venue.

Rules pertaining to venue are set out in Iowa Code chapter 803 and Iowa Rule of Criminal Procedure 10. Iowa Code section 803.2 states:

1. A criminal action shall be tried in the county in which the crime is committed, except as otherwise provided by law.

2. The court, may on its own motion or on the motion of any of the parties to the proceeding reconsider and grant a pretrial motion for change of venue whenever it appears during jury selection that sufficient grounds would exist for granting the motion under the provisions of [Iowa Rule of Criminal Procedure] 10.

3. All objections to venue are waived by a defendant unless the defendant objects thereto and secures a ruling by the trial court on a pretrial motion for change of venue. However, if venue is changed pursuant to subsection 2, all objections to venue in the county to which the action is transferred are waived by a defendant unless the defendant objects by a motion for change of venue filed within five days after entry of the order transferring the action and secures a ruling by the trial court on the motion before a jury has been impaneled and sworn.

Iowa Code section 803.3(1) makes special provision when

conduct or results which constitute elements of an offense occur in two or more counties, prosecution of the offense may be had in any of such counties. In such cases, where a dominant number of elements occur in one county, that county shall have the primary right to proceed with prosecution of the offender.

On April 22, 1988, the court sustained Dicks' motion for change of venue and transferred the case from Monroe to Mahaska County on grounds that adverse media attention might make it impossible to have a fair trial. In December 1988 the court overruled a second motion, which urged the same grounds. As discussed further below, Dicks eventually waived his jury trial. Nonetheless, the trial court apparently sat in Mahaska County pursuant to the original change of venue.

On May 13, 1988, the State applied for rulings on various preliminary questions. The State indicated that some of the elements in Count I may have occurred in Polk County and asked the court to find that Monroe County had the primary right

to proceed pursuant to Iowa Code section 803.3(1). Dicks resisted, arguing that the issue had "been fully and fairly decided." The court ruled that Monroe County could properly proceed with the charge in Count I.

■ Section 803.3 makes special provisions for venue and supersedes section 803.2(1). Our rules of statutory construction are well known. Considering the language and objects of the statutes, we place a reasonable construction on the statutes to best effectuate their purpose. *Metier v. Cooper Transport Co., Inc.*, 378 N.W.2d 907, 912 (Iowa 1985). Section 803.2(3) unambiguously states, "*All* objections to venue are waived." (Emphasis added). Examining the statutes together, we find nothing that would permit defendant to escape the waiver provision of section 803.2(3) with a late objection under section 803.3(1). Thus, if defendant fails to object to venue and fails to secure a ruling by the trial court on a pretrial motion for change of venue, he has waived his right to object to venue.

■ A close reading of the record in this case reveals that (a) Dicks (as opposed to the State) lodged no objection, (b) he resisted a ruling on the issue he now raises, (c) he did not raise the issue in either of his pretrial motions for change of venue, and (d) he did not obtain a pretrial ruling. Defendant failed to meet any of the requirements of the escape clause in section 803.2(3). Putting aside the fact that his appellate argument is inconsistent with that urged before trial, we hold that Dicks waived his objections to venue, and we find no constitutional violation.

### III.

■ Dicks contends that the trial court abused its discretion in overruling his pretrial motion to permit him to voir dire prospective jurors individually. The trial court is vested with discretion in determining whether to sequester jurors for individual voir dire. *State v. McDaniel*, 265 N.W.2d 917, 920–21 (Iowa 1978); *accord State v. Webb*, 309 N.W.2d 404, 414 (Iowa 1981).

■ In *State v. Webb*, the supreme court established a two-part test for determining whether a trial court errs in refusing to allow individual voir dire. First, the defendant must demonstrate an abuse of discretion. 309 N.W.2d at 414 (citing *McDaniel*, 265 N.W.2d at 920–21). Second, the defendant must demonstrate that he was prejudiced by collective examination. *Id.* (citing *State v. LeMatty*, 263 N.W.2d 559, 562 (Iowa App.1977)).

■ It is easy to see that the trial court's refusal to allow individual voir dire may have played heavily in the defendant's choice to waive his right to a jury trial. It is, however, impossible to see how he may have been prejudiced by a collective examination, when that examination never took place. Thus, even if defendant were able to show that the court exercised its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable," *State v. Blackwell*, 238 N.W.2d 131, 138 (Iowa 1976) (establishing abuse of discretion standard (quoting *State v. Burnor*, 132 Vt. 603, 326 A.2d 138, 140 (1974))), he is unable to show he was prejudiced by a collective voir dire. All that appears in the record before us are defendant's bald assertions and a few newspaper items that the district court at one time called "hardly ... 'inflammatory'." *See Webb*, 309 N.W.2d at 414 (prejudice not presumed from "mere publication of news stories" (citing *State v. Frank*, 298 N.W.2d 324, 327 (Iowa 1980))). We hold that defendant is unable to show that the trial court erred in refusing to permit individual voir dire, and we find no constitutional violation.

### IV.

■ Dicks contends that the trial court erred in refusing to sever the various charges against him for separate trials. Iowa Rule of Criminal Procedure 6(1) states, in relevant part:

Two or more public offenses which arose ... from two or more transactions or occurrences constituting parts of a common scheme or plan may be alleged and prosecuted as separate counts in a single ... information ... unless, for good

cause shown, the trial court in its discretion determines otherwise....

This rule vests the trial court with broad discretion. *State v. Lam*, 391 N.W.2d 245, 249–51 (Iowa 1986); *State v. Bair*, 362 N.W.2d 509 (Iowa 1985). Again, we review for an abuse of that discretion. The supreme court has stated that "two charges arise out of the same act or transaction if they are so clearly linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge." *Bair*, 362 N.W.2d at 511 (quoting *State v. Fitzgerald*, 267 Or. 266, 516 P.2d 1280, 1284 (1973)). We are faced with more than one transaction or occurrence, and the supreme court has examined the "common scheme or plan" language in *Lam*. Noting that the rule presupposes more than one act, 391 N.W.2d at 249, the court looked to such factors as modus operandi, "continuing motive," and temporal and geographic proximity, *id.* at 250. The court also recognized society's interest in judicial economy and a necessity that the defendant demonstrate prejudice. *Id.* at 251.

Defendant's argument rests primarily on the temporal and geographic proximity factors. We recognize that the acts here did occur over a period of about three years and that some of the acts may not have occurred in the same place as the others. Nevertheless, the other factors weigh heavily in favor of trying the charges together. These include similar acts carried out in similar ways with a long standing and continuing motive to gratify himself and, perhaps, to corrupt the morals of several children.

We hesitate to place undue emphasis on judicial economy where the counterbalancing consideration is the fairness of the trial; however, judicial economy also plays an important role because much of the underlying evidence in this case is the same. We find no prejudice to the defendant for two reasons. First, if the separate acts in this case were not part of the res geste, they nevertheless may have been admissible to show defendant's motive, opportunity, intent, preparation, plan, knowledge, and identity. *See State v. Wade*, 467 N.W.2d 283, 285–86 (Iowa 1991). Second, the trial here was heard by the court, sitting without a jury, which made extensive findings of fact demonstrating that it appropriately and effectively compartmentalized the evidence in the face of potentially complex and lengthy trial. *See State v. Clark*, 464 N.W.2d 861, 863 (Iowa 1991) (prejudice could result from long complex trial to jury). We hold that the trial court did not abuse its discretion in refusing to separate the charges for trial, and we find no constitutional violation.

## V.

■ Dicks also complains that the first search warrant was based on information obtained when a police officer asked D.C.'s fifteen-year-old son to look for photos and pornographic magazines. Dicks argues that the police acted improperly by using J.C. as an agent or instrument to conduct a warrantless search which they could not have conducted themselves.

Defendant has failed to comply with appellate procedure rule 14(a)(5), which requires an appellant to discuss our standard of review and specifically "to state how the issue was preserved for review," both with appropriate citation. Careful review of the record reveals the fact that this issue was not presented to or passed on by the trial court. We have repeatedly held that matters not raised in the trial court, including constitutional questions, cannot ordinarily be asserted for the first time on appeal. *State v. Niehaus*, 452 N.W.2d 184, 186 (Iowa 1990); *State v. Lyon*, 223 N.W.2d 193, 194 (Iowa 1974). Therefore, we need not address the question. *See also Shill v. The Careage Corp.*, 353 N.W.2d 416, 420 (Iowa 1984).

## VI.

■ Dicks attacks the district court and magistrate findings that the initial search warrant was supported by probable cause. Dicks argues that the evidence seized should have been suppressed. Because Dicks challenges the constitutionality of the procedure used in obtaining the search

warrant, our review is de novo. *State v. Niehaus*, 452 N.W.2d 184, 187 (Iowa 1990). We consider only that which was reduced to writing and actually presented to the magistrate at the time the application was made. *Id.* at 329. "[T]he test is whether a person of reasonable prudence would believe a crime was being committed on the premises to be searched or evidence of a crime could be located there." *State v. Seager*, 341 N.W.2d 420, 427 (Iowa 1983).

The warrant application stated, in relevant part:

[B.C.] ... indicated that over a period of approximately three (3) years she had been subjected to pressure to be involved in sexual activity with her mother and an adult male. Part of this activity involved her and her brother having to take photographs of [D.C.] and Robert Dicks while both of these adults were in the nude and while they were having sexual relations....

Specifically relating to the nude photographs that were to have been taken by the [C.] children, it was indicated that these photographs would either be in the closet at this residence or with their mother as she normally takes them with her when she goes out of town.

[J.C.] ... substantiated that this type of activity had occurred and that he had also had to take photo's [sic] of Dicks and his mother. [J.C.] further stated that these pictures are normally within his mothers [sic] closet or with her if she is out of town.

Neither party raises the issue of whether Dicks may challenge the execution of a warrant on and seizure of evidence from D.C.'s home. We will assume that Dicks has sufficiently established his reasonable expectation to privacy. Although police had known that the evidence was not present when they interviewed J.C. because D.C. often took the photographs with her, they also knew that they would be in D.C.'s possession or in her closet when she returned home, where she was confronted by police. The application states information that the children had been "subjected to pressure to be involved in sexual activity"

with two adults. This language indicates sexual abuse or exploitation of children or lascivious acts with children had occurred. It specifically states how the information was obtained. It also states that the evidence would be found with D.C. at home. From this, we think a person of reasonable prudence would believe crimes had been committed on the premises and that evidence of these crime could be located there. We hold that there was probable cause to issue a search warrant.

Defendant also attacks the veracity of the warrant application. He contends that the police concealed the fact that they had knowledge through their interview with J.C. that the photographs would not be in D.C.'s closet. We find nothing in the record to show that this issue was presented to or ruled on by the trial court. We will not ordinarily address issues not raised in the trial court, including constitutional questions, for the first time on appeal. *Niehaus*, 452 N.W.2d at 186; *Lyon*, 223 N.W.2d at 194. We decline to address the question. *See also Shill*, 353 N.W.2d at 420.

## VII.

Finally, Dicks challenges the imposition of eight consecutive prison sentences. He argues that the district court abused its discretion. He contends that the court was biased and concerned only about the nature of the crime and that the sentence is excessive and disproportionate to his offenses.

In sentencing matters, we review for an abuse of the court's discretion. *State v. Farnum*, 397 N.W.2d 744, 749 (Iowa 1986). As we have noted, abuse of discretion is generally characterized as being "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Blackwell*, 238 N.W.2d at 138 (quoting *Burnor*, 326 A.2d at 140). We are also guided by our sentencing statutes in chapter 901 of the Code. Section 901.5 provides:

The court shall determine which of [the sentencing options] is authorized by law for the offense, and of the authorized sentences, which of them or which combination of them, in the discretion of the

court will provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others.

Section 901.8 states: "If a person is sentenced for two or more separate offenses, the sentencing judge may order the second or further sentence to begin at the expiration of the first or succeeding sentence." We have said elsewhere that the defendant must show the sentence is "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *State v. Fink*, 320 N.W.2d 632, 634 (Iowa App.1982) (citation omitted).

Dicks suggests that the court inappropriately concentrated only on one factor in sentencing, *see State v. Dvorsky*, 322 N.W.2d 62, 67 (Iowa 1982), the nature of the crime. Although the court stated its disgust for defendant, we think the record demonstrates that the court also appropriately weighed a number of factors in reaching its decision. The court noted Dicks' lack of remorse, lack of concern about the victims, his calculating plan to sexually abuse and cover up his crime, and his abuse of very young children. The court further ordered an evaluation of Dicks and expressed its concern that he receive any treatment available. Defendant, however, would have us commit the error he complains of by concentrating on his age (fifty) and the fact that he will be over eighty years of age if he completes his sentence on schedule.

Dicks also suggests that the sentence is excessive and disproportionate to the severity of the crimes as to be cruel and unusual punishment. *State v. Bousman*, 278 N.W.2d 15, 17 (Iowa 1979) (quoting *Coker v. Georgia*, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977)). Defendant committed three class "B" felonies, three class "C" felonies, and two class "D" felonies. His arguments and comparisons are completely specious. He fails to make any analysis of the levels of intent and culpability necessary to such comparisons. The various factors noted above show that imposing consecutive sentences in this case was appropriate and was not excessive or disproportionate to the crimes.

We note that Iowa Code section 901.5 poses a difficult balancing act in mandating "maximum opportunity for the rehabilitation of the defendant, and for the protection of the community." *See, e.g., State v. Hill*, 465 N.W.2d 309, 312 (Iowa App.1990) (Schlegel, J., concurring). We think the sentencing court appropriately carried out its discretion under this statute. The court ordered evaluation and treatment to the extent available, but also acted on a justifiable concern to protect the community. We therefore hold that the sentencing court did not abuse its discretion. Defendant has failed to show that the sentence was a result of passion or bias, and we find the sentence was not excessive or disproportionate. We find no constitutional violation.

## VIII.

We hold that defendant Robert Dicks waived any objection to venue. We hold that the initial search warrant was supported by probable cause and that defendant has waived other challenges to the evidence obtained thereby. Finally, we hold that the trial court did not commit abuses of discretion in refusing to permit individual voir dire of prospective jurors, in refusing to sever the charges for separate trial, and in imposing consecutive sentences. Finding no error, we affirm the trial court in all respects.

AFFIRMED.