# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1187

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　Plaintiff – Appellee,　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States District
　　　　v.　　　　　　　　　　　　*　Court for the Western District of
　　　　　　　　　　　　　　　　　*　Missouri.
Timothy D. Morriss,　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　Defendant – Appellant.　*
　　　　　　　　　　　　　　　　　*

_____

Submitted: June 9, 2008
Filed: July 3, 2008

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Timothy D. Morriss appeals the district court's[1] denial of a motion to suppress statements Morriss made outside the presence of counsel. Morriss argues that the district court erred by finding that his Sixth Amendment right to counsel did not attach during an interview in which he provided inculpatory statements. Morriss also argues

_____

[1] The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

that the government violated his due process rights by interviewing him during a lapse in representation. We affirm.

## I. Background

Morriss volunteered as an assistant wrestling coach for a team of female wrestlers. In July 2005, Morriss traveled with the team from Frisco, Texas to Fargo, North Dakota. After the competition, as the team traveled back to Texas, Morriss engaged in sexual conduct with two of the female athletes sitting next to him on the bus. The female victims promptly reported the incident to local authorities upon returning to Texas.

In December of 2005, the Federal Bureau of Investigation began to investigate Morriss. On March 2, 2006, the government obtained a warrant to collect hair, blood, and saliva from Morriss. On March 9, Morriss appeared with his attorney, David Wahlberg, to comply with the warrant. The government, recognizing that Morriss had obtained counsel, did not attempt to interview Morriss during the execution of the warrant. On March 15, Morriss, again with the assistance of Wahlberg, complied with a subpoena requesting his employment records.

On April 2, the government initiated plea negotiations by contacting Wahlberg. The government stated its initial offer was final, and if a deal was not reached, Morriss would be indicted when the next grand jury convened. On April 19, Wahlberg informed the government that he only represented Morriss for the execution of the subpoena and search warrant and that Morriss had not retained him as counsel for any other purpose.

On April 25, the government sent FBI Agent Lipanovich to obtain a statement from Morriss. Lipanovich went to a gym where Morriss worked and told Morriss that he wanted to give him "an opportunity to explain his side of the story." Lipanovich identified himself as an FBI agent and made it clear that Morriss was not required to

speak with him. Morriss indicated that he was eager to tell his side of the story and denied sexual contact with the female victims. Lipanovich asked Morriss if he could explain why Morriss's DNA was on the first female victim's shorts. Morriss then admitted that sexual contact occurred, but claimed that the first female victim initiated the contact with him while he was sleeping and that he told her to stop. Lipanovich responded that he did not find Morriss's explanation believable, at which point Morriss said, "maybe I need to get an attorney." Lipanovich stated that if Morriss wanted to get an attorney, the conversation was over. Morriss reiterated that he "needed to hire an attorney," and Lipanovich ended the interview. At no point in the conversation did Morriss mention Wahlberg or say he was represented by counsel.

Following the denial of a motion to suppress Morriss's statements from the April 25 interview, Morriss pled guilty to enticing a minor to engage in sexual activity, a violation of 18 U.S.C. § 2422(b). On appeal, Morriss argues that the April 25 interview should have been suppressed on the grounds that the government violated his Sixth Amendment right to counsel. Morriss also argues that the April 25 interview should have been suppressed because it violated notions of fundamental fairness guaranteed by due process.

## II. Discussion

In reviewing the district court's denial of the motion to suppress, we review factual findings for clear error and conclusions of law de novo. United States v. Jimenez, 478 F.3d 929, 931 (8th Cir. 2007).

The long-standing rule is that the Sixth Amendment right to counsel does not attach until "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois, 406 U.S. 682, 689 (1972) (plurality opinion); United States v. Edelmann, 458 F.3d 791, 803 (8th Cir. 2006). The Supreme Court recently re-examined the point of attachment for the Sixth Amendment right to counsel, and again

emphasized that the right to counsel "'does not attach until a prosecution is commenced.'" Rothgery v. Gillespie County, ___ S. Ct. ___, No. 07-440, 2008 WL 2484864, at *5 (June 23, 2008) (quoting McNeil v. Wisconsin, 501 U.S. 171, 175 (1991)).  The question the Court faced in Rothgery was "whether attachment of the right also requires that a public prosecutor (as distinct from a police officer) be aware of that initial proceeding or involved in its conduct." Id. at *3. The Court determined that the involvement of a prosecutor is not required for attachment of the right to counsel.   Rather, the court "reaffirm[ed]" the bright-line rule that it and "an overwhelming majority of American jurisdictions" have held:

> a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel.

Id. at *12.

Morriss argues his right to counsel had attached long before any such judicial proceeding, at or before the April 25 interview, because he effectively "faced . . . the prosecutorial forces of an organized society" such that the actions of law enforcement in this case had "solidified" the "adverse positions" of the government and the accused. Kirby, 406 U.S. at 689.  In making this argument, he specifically relies upon the investigators' and prosecutors' actions in their use of a subpoena to compel employment records, a warrant to compel the production of biological evidence, and the initiation of plea bargaining, claiming that these actions are tantamount to "adversary judicial criminal proceedings."  Id.  Morriss argues, in effect, that we should abandon the bright-line rule the Court unambiguously reaffirmed in Rothgery requiring appearance before a judicial officer and adopt a more flexible approach based upon a case-by-case examination of the prosecutors' and/or investigators' actions.  Rothgery, like Kirby and Edelmann, clearly requires that we reject such an argument.  Because Morriss's right to counsel had not attached at the time of the April

interview, the district court correctly denied his motion to suppress statements from that interview.

Morris also argues generally that the government violated his right to due process by conducting an interview under circumstances that were fundamentally unfair. The parties disagree as to whether Morriss sufficiently raised this argument below. Morriss raised this argument tangentially in the context of his motion to suppress based on the alleged violation of the Sixth Amendment. Regardless of whether this argument was sufficiently raised below, we find that it is without merit. Morriss's argument assumes that the government took advantage of him. The facts belie this assumption. The record indicates that Agent Lipanovich clearly stated Morriss was under no obligation to discuss the case and that Morriss willingly told his side of the story. When Morriss realized that he was providing inculpatory information, Morriss stated that he thought he should get an attorney, and Agent Lipanovich promptly ended the interview. Such an investigation does not reach the level of being fundamentally unfair.

We affirm the judgment of the district court.

_____